The decree so far as appealed from must be reversed, and the pro-- ceeding remitted to the Surrogate's Court, with costs to the appellant,. and one bill of costs to the respondents payable out of the estate. All concur, except HOUGHTON, J., dissenting with respect to the con-- version of the notes.

## COTTRELL v. ALBANY CARD & PAPER MFG. CO.

(Supreme Court, Appellate Division, Third Department.    January 4, 1911.)-

1. APPEAL AND ERROR (§ 927*)—REVIEW—PRESUMPTION.

. On appeal from a dismissal of the complaint on the opening of counsel, the opening must be presumed to have followed the complaint, where-it does not appear in the appeal book.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 927.*]:

2. APPEAL AND ERROR (§ 662*)—STATEMENTS IN RECORD—BINDING EFFECT.

A statement of defendant's counsel as to plaintiff's claim in the record on appeal does not bind plaintiff, except as specifically assented to· by his counsel.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 662.*].

3. CORPORATIONS (§ 547*)—STOCK—RIGHTS OF CREDITORS.

The capital stock of a corporation is intended as a fund to ultimately· secure and pay all creditors present and future.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 547.*]

4. BANKRUPTCY (§ 282*)—DIVIDENDS OF CORPORATIONS—PAYMENT OUT OF· STOCK—RECOVERY BY TRUSTEE.

The right of the trustee of a bankrupt corporation to sue to recover· dividends unlawfully paid out of the capital is not defeated by his disclaimer that such payments rendered the corporation actually insolvent. when they were made.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 282.*]

5. BANKRUPTCY (§ 282*)—TRUSTEES—RIGHT TO SUE.

Under Bankruptcy Act July 1, 1898, c. 541, § 70e, 30 Stat. 566 (U. S.. Comp. St. 1901, p. 3452), authorizing a trustee to avoid transfers which· creditors might have avoided, the trustee of a bankrupt corporation can. sue for dividends unlawfully paid out of the capital.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 282.*]

6. CORPORATIONS (§ 428*)—OFFICERS—IMPUTATION OF KNOWLEDGE.

That two of the officers of a corporation which owned all the stock of¨ another corporation composed a majority of the directors of the second· company charged the first company with any knowledge by its officers· as such directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761 ;. Dec. Dig. § 428.*]

7. CORPORATIONS (§ 545*)—UNLAWFUL DIVIDENDS.

Deliberate unlawful payment of corporate dividends out of capital im-- plies fraud as to creditors.

[Ed. Note.—For other cases, see Corporations, ·Cent. Dig. §§ 2170–2175 ; Dec. Dig. § 545.*]

8. BANKRUPTCY (§ 284*)—RECOVERY OF UNLAWFUL DIVIDENDS—DEMAND UN-- NECESSARY.

No demand is necessary before suit to recover dividends wrongfully · paid· out of a bankrupt corporation's capital.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 284.*]

Houghton, J., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.-

Appeal from Trial Term, Saratoga County.

Action by Horace Cottrell, trustee in bankruptcy of the Schuylerville Paper Company, against Albany Card & Paper Manufacturing Company. From a judgment dismissing the complaint and from an order granting defendant an extra allowance, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Edgar T. Brackett, for appellant.
Hun & Parker, for respondent.

SMITH, P. J. This is an action brought by a trustee in bankruptcy against the sole stockholder of the bankrupt company to recover certain dividends amounting to $17,600 paid by it between December 27, 1902, and January 8, 1907, both inclusive, upon the ground that such dividends were paid in violation of the statute as being paid out of the capital and not out of the profits of the company. It is alleged in the complaint that defendant at such times owned all the capital stock of said bankrupt company; that during such times said company had three directors, two of whom were officers of defendant company, and both they and defendant company well knew that said dividends were paid from the capital of the bankrupt company and not from its profits; that the Schuylerville Paper Company, a domestic corporation, was adjudicated a bankrupt on or about July 28, 1908; and that the assets of said bankrupt are insufficient by more than $25,000 to pay its creditors. The answer sets up denials and the statute of limitations. The complaint was dismissed upon the opening of counsel upon the ground that it did not appear that the payment of the dividends in question rendered said bankrupt company insolvent at the time, and also that it did not appear but that any recovery had in this action would inure to the benefit of the stockholder of said company. Inasmuch as the complaint was dismissed upon the opening of counsel and that opening does not appear in the appeal book, it must be assumed that his opening followed the lines of the complaint. The statement of defendant's counsel as to plaintiff's claim which appears in the record in no way binds the plaintiff, except as specifically assented to by plaintiff's counsel. The question thereupon arises as to whether said complaint contains allegations sufficient to constitute a cause of action, in connection with the admitted fact that the payment of the dividends did not at that time cause the insolvency of the company.

It seems clear that the capital stock of a corporation is intended as a fund for the ultimate security and payment of all its creditors, both present and future. Thus section 28 of the present stock corporation law (Consol. Laws, c. 59) prohibits directors from declaring dividends "except from the surplus profits arising from the business of such corporation," and sections 62, 63, and 64 provide in detail for the reduction of the capital stock of a corporation; the provisions of all of these sections having long been the law of this state. In Williams

v. Western Union Telegraph Co., 93 N. Y. 162, at pages 187 and 188, Judge Earle says:

"These provisions were intended to prevent the division, distribution, withdrawal, and reduction of the property of a corporation below the sum limited in its charter or articles of association for its capital, but not to prevent its increase above that sum. The purpose was to prevent the depletion of the property of the corporation thereby endangering its solvency. * * * All these provisions show that it was the purpose of the Legislature, by means of them, to create a property capital for the corporation, and then to keep that intact so as to secure the solvency of the corporation and its responsibility to its creditors."

The same holding appears in Hutchinson v. Stadler, 85 App. Div. 424, at pages 432 and 436, 83 N. Y. Supp. 509, at page 518:

"Among the obligations resting upon directors, one is to keep the corporate property intact, in order that it may remain solvent for the purpose of being answerable to the creditors of the corporation, and also that it may be kept intact as a going concern to enable it to carry out the purposes of its creation for the benefit of its shareholders, as was designed when the interests were united, and for which the incorporators and shareholders contributed their funds. It has long been settled that the directors are not authorized to declare dividends out of the capital stock of the corporation as between it and its creditors. Such distribution depletes the fund upon which the creditors have the right to rely for the payment of their obligations, and upon the faith of which the debts were contracted. Williams v. Western Union Tel. Co., 93 N. Y. 162."

Defendant strongly urges that no recovery can be had in the case at bar inasmuch as there is no claim that the present debts of the corporation were such at the times of the making of these unlawful dividends. But the idea of the capital stock of a corporation being a fund for the benefit of its creditors seems to apply with equal force to future as well as to present creditors. If a wrong is done to its present creditors by secretly decreasing the total assets out of which payment of its debts could be enforced by them, no less a wrong is done to persons who subsequently became its creditors without notice of the depletion of such assets and who consequently had a right to assume that the directors had not violated the express terms of the statute regarding unauthorized dividends. In the case of Williams v. Boice, 38 N. J. Eq. 364, which was an action by a receiver to recover dividends paid out of capital, the chancellor says, at pages 370 and 371:

"Another objection is that there is no allegation that any of the debts which now exist were debts or liabilities at the time of the payment of the dividends. * * * Although there are cases in which it has been said that the recovery can only be had in cases of this kind by creditors whose debts exist at the time of the withdrawal of the funds, that view is not to be adopted. The distinction is not well founded. The capital of a corporation is a fund pledged for the payment of its debts. Each person who gives credit to it does so in the confidence that that fund exists for his protection and security against loss. If the stockholders secretly withdraw it, under the false pretense of dividends of profits when there are none, it is obvious that as great a wrong may be done to future creditors as to existing ones. In either case the stockholders hold a part of that fund, which is pledged to the payment of the creditors. The injury to the existing creditors is obvious. That to the future creditors is the same, for the stockholder holds out to him that the capital is of the nominal amount, while in fact he has secretly with-

drawn part of it. If all who should become creditors after the withdrawal had notice of the fact that the capital had been reduced—that the dividend had been paid out of the capital—then the distinction might perhaps be maintained, but they not only have no such notice, but in fact are led to believe that the capital is what it nominally purports to be."

The complaint of the appellant here was dismissed upon the opening principally upon the ground that appellant disclaimed that the dividends in question, although paid out of capital, rendered the corporation actually insolvent at such times. But if the capital of a corporation be regarded as a fund for the ultimate payment of creditors, and so to be kept intact unless diminished in the manner prescribed by statute, the mere fact that the assets still remain equal to the liabilities cannot justify dividends such as these. The statute does not allow capital to be depleted by means of dividends up to the very point of insolvency; on the contrary, the capital is to be kept intact and unimpaired, and creditors have a right to rely upon this policy of the law in their dealings with corporations. The argument of respondent, if admitted, would manifestly put a premium upon fraud, as then the entire net assets of a corporation, including capital paid in, over and above its actual debts and liabilities at any one time, could be secretly withdrawn by its stockholders in the form of dividends, thus forcing its creditors to bear all the risk of insolvency arising from any slight business loss or shrinkage of assets.

Respondent further claims that appellant as trustee in bankruptcy is not authorized to bring the action. But section 70, subdivision "e," of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3452]), seems to allow an action such as this if any creditor could have brought the action, and this irrespective of whether the action be based expressly upon fraud or not. The unauthorized dividends are in effect property of the corporation unlawfully diverted and as such properly recoverable by creditors, or by the trustee in bankruptcy as representing them. In Cook on Corporations (2d Ed.) at page 1496, it is said:

"Hence the rule has been firmly established that, where dividends are paid in whole or in part out of the capital stock, corporate creditors, being such when the dividend was declared or becoming such at any subsequent time, may, to the extent of their claims, if such claims are not otherwise paid, compel the stockholders to whom the dividend has been paid to refund whatever portion of the dividend was taken out of the capital stock."

The courts have sometimes refused to apply this rule when either the directors or stockholders, or both, have made and received the dividend in good faith—that is, not knowing or supposing it to have been paid out of profits—but such is not this case. It is alleged in the complaint that at the times of these dividends two of the officers of the stockholding company composed a majority of the directors of the bankrupt company, which fact would of itself be sufficient to charge the stockholding company with any knowledge possessed by its officers in their capacity of directors of the bankrupt company. It is further alleged both that such officers and the stockholding company knew that said dividends were not paid from profits. These allegations, if proved, would seem conclusive as to the actual fraud

126 N.Y.S.—68

of the defendant as against the creditors of the bankrupt. When corporate stock deliberately and with full knowledge is withdrawn and diverted in violation of the statute, bad faith must necessarily be present, and such bad faith raises immediately upon the receipt of the unlawful dividends an implied obligation to repay such dividends to the corporation or to its creditors. The diversion of assets being in bad faith, no demand before suit is necessary, and, accordingly, after bankruptcy the trustee, without more, may sue at once for the recovery of the assets so diverted.

Judgment reversed, and a new trial granted, with costs to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except HOUGHTON, J., dissenting.