EDWARD J. QUINTAL and Others, as Trustees in Bankruptcy of CONSOLIDATED FACTORS CORPORATION, Bankrupt, Plaintiffs, *v.* JESSE ADLER and Others, Defendants.

Supreme Court, New York County, January 24, 1933.

*Gleason, McLanahan, Merritt & Ingram* [*John W. Simpson, II,* and *Hamilton A. Long* of counsel], for the plaintiffs.

*Louis Martin Levy, Sidney Newborg, Elwood G. Feldstein, David Haar, Kurzman & Frank, Sol Rubin, Philip J. Jacoby, Harry Lyons, Gilbert & Gilbert* and *Max Frank,* for various defendants.

SHIENTAG, J. Plaintiffs, trustees in bankruptcy of an insolvent corporation, seek to recover dividends paid to one hundred and

seventy-eight defendants, stockholders, one year prior to the adjudication in bankruptcy, on the ground that the dividends were unlawfully paid out of the capital of the corporation. The dividends in question were declared in November, 1928, and June, 1929, and were paid in January and July, 1929. The complaint does not allege that the dividends were paid during insolvency or that such payments rendered the corporation insolvent, nor does it allege that the stockholders received the dividends in bad faith or with knowledge that they were paid from capital. On the contrary, the complaint alleges that the dividends were paid pursuant to resolution of the board of directors, unanimously adopted, which set forth that they were semi-annual dividends and that they were declared " from the surplus profits of the company."

The defendants, stockholders, move. to dismiss the complaint for insufficiency. The question directly presented for consideration is: May a stockholder be required to refund dividends seemingly declared in the regular course of business out of profits but actually declared and paid out of capital (1) when the corporation was not insolvent at the time the dividends were paid but subsequently became so, and (2) when the stockholder had no knowledge that the dividends were paid out of capital.

The complaint cannot be sustained on the theory that it sets forth a cause of action to enforce the common-law right of creditors to follow and recover money of a corporation fraudulently paid or transferred to the stockholders. Without considering all of the allegations necessary to state such a cause of action, it suffices to say that the basis of the action is that payments were made during the insolvency of the corporation, or that it was rendered insolvent thereby. Such an allegation is here lacking. The complaint cannot be upheld on the theory that although the corporation was solvent at the time the payments were made, the dividends were declared out of capital in contemplation of insolvency and were paid and received pursuant to a scheme to defraud creditors. The good faith of the recipients of the dividends is not challenged in the complaint, nor are any facts set forth from which fraud or bad faith may be inferred.

The complaint is not good, independently of statute, under the so-called " trust fund " doctrine. On this point there is a plethora of language in the cases, often inaccurately expressed, a good deal of it in the form of comment having little if anything to do with the actual decision reached. It would serve no useful purpose to discuss or to analyze these cases. No decision in this jurisdiction has been brought to my attention in which the " trust fund " theory was held to support the recovery of payments made to

stockholders unless such payments were made during insolvency or resulted in the insolvency of the corporation. The United States Supreme Court and courts in other jurisdictions have rejected the " trust fund " doctrine in so far as it was sought to be applied to a corporation solvent at the time of the payments complained of.

" Under the decisions of the courts of the United States there is no solid foundation for the contention that the capital of a corporation which is solvent is a ' trust fund ' upon which 'there is any lien for the payment of the corporate debts. The capital of a solvent corporation is as much the absolute property of the corporation as is the property of an individual. Neither a corporation nor an individual can so exercise the power of disposition over that which is possessed as to fraudulently defeat the just demands of creditors. But neither the individual nor the corporation can be said, in any accurate sense, to hold his or its property subject to any trust in favor of creditors." (*Lawrence* v. *Greenup*, 97 Fed. 906, 908.) (See, also, *McDonald* v. *Williams*, 174 U. S. 397, 403; *Bartlett* v. *Smith*, [Md.] 160 Atl. 440; 161 id. 509; *Hospes* v. *Northwestern Manuf'g & Car Co.*, 48 Minn. 174; *Coleman* v. *Hagey*, 252 Mo. 102, 135.)

Plaintiffs contend that whatever the rule may be independently of statute, the dividends here sought to be recovered were paid from capital in violation of the provisions of section 58 of the New York Stock Corporation Law; that the stockholders who received the payments were mere donees; that in violation of law they became the recipients of property of the corporation which they are called upon to return irrespective of their good faith or the solvency of the company at the time the dividends were paid; that the plaintiffs *ex æquo et bono* are entitled to recover these moneys.

Section 58 of the New York Stock Corporation Law provides in substance that " No stock corporation shall declare or pay any dividend which shall impair its capital or capital stock  *  *  *. In case any such dividend shall be paid, or any such distribution of assets made, the directors in whose administration the same shall have been declared or made, except those who may have caused their dissent therefrom to be entered upon the minutes of the meetings of directors at the time or who were not present when such action was taken, shall be liable jointly and severally to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or by its creditors respectively by reason of such dividend or distribution."

Liability is specifically imposed by this section on the board

of directors, but the section itself imposes no liability on stockholders. Had it been the intention of the Legislature to hold stockholders to the same degree of responsibility as it does boards of directors, it would undoubtedly have provided for such liability in the same statutory enactment. This has been done specifically by statutes in other States. It is significant that with respect to insurance corporations the Legislature of this State formerly saw fit to impose liability on the stockholders. Section 20 of chapter 308 of the Laws of 1849 provided that " No dividend shall ever be made by any company incorporated under this act, when its capital stock is impaired, or when the making of such dividend would have the effect of impairing its capital stock, and any dividend so made shall subject the stockholders receiving the same to a joint and several liability to the creditors of said company to the extent of the dividend so made." This section was repealed in 1892 (Chap. 690, § 290), and in its place there was enacted what are now sections 41 and 42 of the Insurance Law which make the stockholders of an insurance corporation liable under certain specified conditions for impairment in the capital of the corporation however caused.

No case in this jurisdiction has passed squarely on the question here presented. Other jurisdictions refuse to impose liability on stockholders in a situation such as now before this court. (*McDonald* v. *Williams, supra; Bartlett* v. *Smith,* 160 Atl. 440.) (See *Mente* v. *Groff,* 10 Ohio N. P. [N. S.] 149, *contra.*)

In *McDonald* v. *Williams* (*supra*) the basis of the action was a Federal statute providing in substance that " no association, or any member thereof, shall, during the time it shall continue its banking operations, withdraw or permit to be withdrawn, either in the form of dividends or otherwise, any portion of its capital." This statute is at least as broad as ours, which makes no reference at all to the liability of stockholders. The United States Supreme Court held that when the dividend payments were made while the corporation was solvent they could not be recovered from innocent stockholders after the subsequent insolvency of the company.

After rejecting the application of the " trust fund " doctrine to a corporation solvent at the time of the dividend payments sought to be recovered, the court said: " But it is urged on the part of the complainant that section 5204 of the Revised Statutes* makes the payment of a dividend out of capital illegal and *ultra vires* of the corporation, and that money thus paid remains the property of the corporation, and can be followed into the hands of any volunteer * * *. The reception of the dividend by the shareholder in good faith, was not a wrongful or designedly improper act. Hence

* U. S. Code, tit. 12, § 56.

the liability of the shareholder should not be enlarged by reason of the conduct of the directors * * *. Is each shareholder an absolute insurer that dividends are paid out of profits? Must he employ experts to examine the books of the bank previous to receiving each dividend? Few shareholders could make such examination themselves. The shareholder takes the fact that a dividend has been declared as an assurance that it was declared out of profits and not out of capital, because he knows that the statute prohibits any declaration of a dividend out of capital. Knowing that a dividend from capital would be illegal, he would receive the dividend as an assurance that the bank was in a prosperous condition and with unimpaired capital " (pp. 405, 406, 407).

The Court of Appeals of Maryland recently took the same position.

" In this situation we are disposed to follow the federal decisions as being more in accord with modern conditions and with the realities of life. In these days stocks of corporations are so widely held that it would be practically impossible for stockholders generally to know whether or not each semi-annual dividend paid in regular course was earned. Whatever their position may be theoretically, practically they are in no better position than creditors to know the condition of the company, and it would be an unfair and unreasonable burden to require them to pay back, years after they have been spent, dividends received in good faith from a solvent corporation in regular course of business." (*Bartlett* v. *Smith, supra,* 440, 441.)

The wrongful declaration of a dividend out of capital in violation of statute " is primarily only the wrong of those who commit it, like any other tort, and innocent participants are not accomplices to its commission. * * * when the liability is based merely on the depletion of the capital, a stockholder must be charged with notice of that fact * * *. This is not a defense which must be pleaded, like that of *bona fide* purchaser; it is necessary positively to allege the stockholders' complicity in the wrong to set forth any case at all." (*Wood* v. *National City Bank,* 24 Fed. [2d] 661, 662, C. C. A. Second Circuit.)

The *ratio decidendi* of *Cottrell* v. *Albany Card & Paper Co.* (142 App. Div. 148), cited in *Small* v. *Sullivan* (245 N. Y. 343, 351), is in harmony with the views here expressed. In the *Cottrell* case it appears that the defendant was the sole stockholder, and that two of its officers constituted a majority of the board of directors of the corporation which paid the dividends out of capital. It was alleged in that case " that such officers and the stockholding

company knew that said dividends were not paid from profits." " These allegations, if proved," said the court, " would seem conclusive as to the actual fraud of the defendant as against the creditors of the bankrupt. When corporate stock, deliberately and with full knowledge is withdrawn and diverted in violation of the statute bad faith must necessarily be present, and such bad faith raises immediately upon the receipt of the unlawful dividends an implied obligation to repay such dividends to the corporation or to its creditors " (p. 153).

To invoke the rule urged by the plaintiffs would lead to harsh consequences. The receipt of a dividend by a stockholder in the regular course and in good faith should be an occasion of felicitation rather than one of suspicion or inquiry on his part. To hold that he receives it at his peril would be to attach an illusoriness to dividend payments which would tend to make them potential liabilities rather than assets. Such a condition would tend to destroy confidence in corporate investments and disorganize business.

If it be said that in the field of business some of the realities of yesterday are the illusions of today; that the troublous times through which we are passing demonstrate the need for greater protection of creditors of corporations, that is a problem of financial and economic policy which is peculiarly within the province of the Legislature. The legislative machinery possesses greater flexibility than the judicial process can or should have in such matters. The Legislature has heretofore imposed liability on stockholders, in certain cases, in normal times. (See, for example, Ins. Law, § 42; Banking Law, § 120.) If the public welfare requires that there should be an extension of such liability, if additional safeguards are needed, the law-making body of the State is the one to take appropriate action.

I hold, therefore, that in a suit by a trustee in bankruptcy, innocent stockholders will not be required to repay dividends declared out of capital where it does not appear that the corporation was insolvent at the time of the payment of dividends, or that it was rendered insolvent by such payment. That is the extent of this decision, for it is all I am called upon to decide on the pending motion.

The motion to dismiss the complaint is granted, with leave to the plaintiffs to serve an amended complaint in accordance with this determination if they are so advised on or before February 6, 1933.