**BARR & CREELMAN MILL & PLUMBING SUPPLY CO. v. ZOLLER et al.**

**In re DOLOMITE 3 CORPORATION.**
**No. 211.**

Circuit Court of Appeals, Second Circuit.
Feb. 26, 1940.

James A. Deckop, of Buffalo, N. Y. (Desbecker, Fisk, Deckop & Conners and Mildred Bork Conners, all of Buffalo, N. Y., on the brief), for appellant.

Howard M. Woods, of Rochester, N. Y., and Mark W. Norman, of Stamford, Conn. (Sutherland & Sutherland, of Rochester, N. Y., and Cummings & Lockwood, of Stamford, Conn., on the brief), for appellees.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

CLARK, Circuit Judge.

Dolomite Marine Corporation and its wholly owned subsidiary, Dolomite 3 Corporation, have filed separate petitions for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. Barr & Creelman Mill & Plumbing Supply Co., the appellant, has asked for the allowance of a claim secured by lien in the sum of $11,469.68 against Dolomite 3 Corporation for materials ordered by the parent corporation, but used in the construction of a vessel owned by the subsidiary debtor. It has filed notice under N. Y. Lien Law, Art. 4, Consol.Laws N.Y. c. 33, of a lien on the vessel in this amount and would admittedly be entitled to it except for a credit claimed by Dolomite 3's trustee and allowed below in the amount of $6,000 as funds illegally paid to the claimant before the incurring of the present indebtedness. This appeal by the claimant raises solely the question of the validity of the credit.

The credit is based upon the fact that appellant received and cashed three checks, totaling $6,000, drawn by Dolomite 3 Corporation in favor of appellant as payee. These checks were given from six to ten months before the reorganization proceedings were begun, at a time when Dolomite 3 admittedly owed nothing to appellant, and were used to satisfy appellant's then existing claim against Dolomite Marine Corporation, the parent of Dolomite 3. Each check showed on its face that it was the check of Dolomite 3; the first one given (as well as another small check not in issue) bore the notation, "For Account of Dolomite Marine Corp.," and they were all signed by the "Asst. Secy." of Dolomite 3, who held a like office and signed checks on the same bank for Dolomite Marine Corporation.

The District Court held that under the circumstances the claimant was charged with a duty of ascertaining the true situation between the corporations and must now credit the amount of these payments against the claim. We think, however, that the trustee of Dolomite 3 has failed to support his burden of proving the three checks to be illegal transfers which he as trustee could set aside under any applicable provision of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

Dolomite Marine, the parent, is a ship-building company. It undertook the construction of vessels through separate subsidiary corporations created especially for the purpose. Dolomite 3 is one of these subsidiaries. It has identical directors and officers, and shares the offices of its parent. Its assets at all times consisted of the unfinished vessel and whatever cash and materials were on hand. Its liabilities—in addition to notes to a bank financing the construction under an agreement to which Dolomite Marine and Petroleum Heat & Power Co. were also parties—included obligations to Dolomite Marine in an intercompany account for expenses incurred by Dolomite Marine on its behalf. Its paid-in capital stock is $1,000.

Before considering the power of a trustee in reorganization to recover property illegally transferred, we should note that we are not convinced of the unlawfulness of the payments. Appellant had sold materials to Dolomite Marine, which Dolomite Marine used in constructing the ship owned by Dolomite 3. Appellant looked to Dolomite Marine as its debtor, but Dolomite Marine was in turn a creditor of Dolomite 3. It would have been proper for Dolomite 3 to satisfy part of its debt to Dolomite Marine by writing these checks in favor of Dolomite Marine's creditor, the appellant. The meager record does not afford means of determining whether such a novation actually occurred. Accordingly we should remand the case for a finding on this question of fact, were we not of the view that the trustee must lose in any event.

Authority for the trustee's claim here must be found in the Bankruptcy Act. The only pertinent provision which we feel requires extended consideration is § 70, sub. e(1), 11 U.S.C.A. § 110, sub. e(1), making "null and void as against the trustee" any transfer which under a state law "is fraudulent as against or voidable for any other reason by any creditor of the debtor" with a provable claim. There can be no preference under § 60, sub. a, 11 U.S.C.A. § 96, sub. a, if the trustee's claim that Dolomite 3 owed appellant nothing is accepted. Nor are the transfers shown to be fraudulent under § 67, sub. d(2), 11 U.S.C.A. § 107, sub. d(2), because although they were made within a year of the reorganization proceedings the trustee failed to show that Dolomite 3 either (a) was rendered insolvent, or

(b) was left with unreasonably small capital, or (c) intended to incur or believed it would incur debts beyond its ability to pay, or (d) had any actual intent to defraud. And under § 70, sub. e(1), we have to consider only a single "other reason" under New York law, namely, that the payments were ultra vires. For there was no fraudulent conveyance under the Uniform Fraudulent Conveyance Act, in force in New York, Debtor and Creditor Law, Art. 10, §§ 273–276, Consol.Laws N.Y. c. 12, for the reasons that defeat the trustee under Bankruptcy Act, § 67, sub. d(2). And § 15 of the N. Y. Stock Corporation Law, Consol.Laws N.Y. c. 59, prohibiting certain transfers to creditors and others, was not violated, since the trustee failed to prove that the payments rendered Dolomite 3 insolvent.

The trustee's power to recapture the payments as·ultra vires cannot be derived from the power of the corporation to do so. Dolomite 3 was made to issue the checks by its sole stockholder, Dolomite Marine. The will of Dolomite Marine was the will of Dolomite 3, and both corporations must be deemed to have ratified the transaction. The trustee is therefore limited to the rights of creditors. Creditors, of course, are not prejudiced by the corporation's acts of ratification. Ward v. City Trust Co., 192 N.Y. 61, 75, 84 N. E. 585; cf. Quintal v. Kellner, 264 N.Y. 32, 36, 189 N.E. 770. But, so far as we have been able to discover, a creditor's power to upset an executed ultra vires transaction seems to be dependent in New York upon his ability to establish a right of action under the so-called "trust fund doctrine." We must, therefore, consider whether the trustee has brought his case within the uncertain limits of that much debated theory as understood and applied in New York.

The well-publicized criticisms of the trust fund doctrine are appreciated in New York, for the Court of Appeals has said recently in Reif v. Equitable Life Assurance Society, 268 N.Y. 269, 276, 197 N.E. 278, 280, 100 A.L.R. 55: "First declared by Justice Story (Wood v. Dummer (1824), Fed.Cas.No.17,944, 3 Mason 308, 311), this 'trust fund doctrine' has been the subject of much adverse commentary and. has often been repudiated as a fiction unsound in principle and vexing in business practice. See 5 Pomeroy's Equity Jurisprudence (4th Ed.) §§ 2319, 2320, 2130, collating the authorities. We do not stop now to canvass the limits of such a theory. It is enough that the facts of the present case—so we hold—do not call for application of the doctrine." But that, of course, is not completely enlightening to us.

The idea, as we are repeatedly told, is that the capital stock of a corporation is a trust fund for the benefit of the corporation's creditors, not to be impaired by diversion for the direct or indirect benefit of the stockholders. Certain aspects of the rule have been codified, and a New York corporation's power to declare dividends and reduce stated capital is regulated by N. Y. Stock Corporation Law, § 58. But there seems to be some part of the doctrine remaining as state common law and applicable to other asset withdrawals which impair capital. Under this law the trustee may perhaps be held to fail here, because he has shown neither insolvency of the debtor nor impairment of its capital at the time of or by the payments, or because the rule cannot be invoked against a payee of a corporate check under circumstances such as those here disclosed. As we shall point out, our decision might possibly rest on one of the first grounds; in any event we think it can rest on the last ground.

Generally it is stated as a part of the trust fund rule that creditors may attack only those impairments of capital which render the corporation insolvent, Hollins v. Brierfield Coal & Iron Co.; 150 U.S. 371, 14 S.Ct. 127, 37 L.Ed. 1113; and there are like statements in New York, Quintal v. Adler, 146 Misc. 300, 262 N.Y.S. 126; affirmed without opinion 239 App.Div. 775, 263 N.Y.S. 943, 264 N.Y. 452, 191 N.E. 509; see Lehman, J., dissenting in Small v. Sullivan, 245 N.Y. 343, 358, 157 N.E. 261. But the contrary has been held by the Appellate Division of the New York Supreme Court in Cottrell v. Albany Card & Paper Mfg. Co., 142 App.Div. 148, 152, 126 N.Y.S. 1070, a case where insolvency did not occur until six years after some of the transfers there ruled invalid were made. This case has been cited with approval on collateral issues by Justice Shientag in Quintal v. Adler, supra, 146 Misc. at page 304, 262 N.Y.S. 126, and by Judge Crane in Small v. Sullivan, supra, 245 N.Y. at page 343, 157 N.E. 261.

Again it is not clear how far. in New York the trustee must go in proving capital impaired. Impairment of capi-

928

tal has been defined as the reduction of assets below the capital stock of the company. Small v. Sullivan, supra, 245 N.Y. at page 350, 157 N.E. 261. The assets of Dolomite 3 were upwards of $175,000; its capital stock was $1,000. If the word "assets" be literally interpreted, a withdrawal of $6,000 did not come even close to impairing capital. But we think it more probable that "assets" must be interpreted as the excess of total assets over total debts, for otherwise a prohibition of capital impairment would be meaningless. Compare In re Bay Ridge Inn, 2 Cir., 98 F.2d 85, 87. Here the corporation never showed a surplus; its assets were never more than its liabilities, plus its capital stock. On this basis a diversion of $6,000 in assets, without reducing liabilities accordingly, would constitute an impairment of capital.

But the third ground is firmer. Though in New York unlawful payments may be recovered from directors, they apparently may not be from stockholders who receive them without notice. Quintal v. Adler, supra. Such payments may or may not be recovered from third parties, depending on circumstances. In Ward v. City Trust Co., supra, a payee of a corporate check was held responsible under the trust fund theory; in Reif v. Equitable Life Assurance Society, supra, a payee was exonerated. The present case seems clearly to fall within the rule of the Reif decision. There the president of a one-man corporation paid his life insurance premiums over a period of ten years with twenty-two checks drawn by the corporation in favor of the insurance company. The court recognized the force of the trust fund rule, which had been invoked by the trial court, but declared it inapplicable to the facts of the Reif case. The Ward decision was distinguished because of the size of the check there involved ($150,000) as compared to the capital of the insolvent company ($250,000). The Reif checks totaled $3,854.64, against a capital of 450 shares of no par common and 275 shares of $100 preferred. In our own case the checks totaled $6,000 and the capital stock of Dolomite 3 was $1,000.

The figures above quoted are relevant only as bearing on whether the payee should have been deemed on notice. If the recipient of the check would be apt to discover nothing disturbing upon investigation, New York will not invoke the

trust fund rule against him. "The rule of responsibility of the payee of corporate paper is strict and sometimes harsh and is not to be extended. * * * We think that rule should not be stretched so as to apply it to the facts of this case upon the basis of the figurative expression that the capital of a corporation is held in trust for its creditors." Page 277 of 268 N.Y., page 281 of 197 N.E., 100 A.L.R. 55. Here the evidence does not persuade us that the circumstances were such as to arouse the appellant's suspicions. Dolomite 3 and Dolomite Marine had close inter-company accounts; appellant had grounds to believe that the payments would be adjusted on the books of parent and subsidiary in some lawful manner. In the words of the Reif case, we need say no more than that the facts of the present case do not call for application of the doctrine.

The parties agreed that $349.35 was deductible for materials not used for the vessel in question. The judgment is therefore reversed with directions that appellant's claim be allowed as a claim secured by a lien against the vessel in the amount of $11,120.33.

SWAN, Circuit Judge (concurring in result).

I agree in the result but I would place decision upon a simple ground. To justify the set-off the debtor's trustee must prove that the debtor had a cause of action against the appellant. That is to say, he must prove that $6,000 of the money of Dolomite 3 Corporation was misappropriated to pay debts of Dolomite Marine Corporation. There was no misappropriation if Dolomite 3 was indebted to Dolomite Marine and received credit on that debt for its payments to the appellant. The trustee made no proof that such was not the fact. There is much in the record to suggest that it may have been. The building of the vessel was to be financed under the contract of December 14, 1937 by the terms of which $250,000 was to be advanced by a bank; and of this sum $30,000 was to be paid to Dolomite Marine to reimburse it for expenditures already made for "shipyard and dock preparation." It is entirely possible that the $6,000 paid to the appellant by the checks of Dolomite 3 was treated by it and its parent corporation as part of this $30,000 reimbursement to which the parent was entitled by the December contract. If so, the payments to

appellant were not ultra vires and there was no misappropriation of money of Dolomite 3.

The majority opinion states that the trustee failed to support his burden of proving the three checks to be illegal transactions, but expresses the view that such failure should result in remanding the case for a finding on this question of fact, except that the trustee for other reasons must lose in any event. In my opinion the trustee's failure to prove the check payments illegal necessitated a decision against him. Having tried his case and failed to put in adequate proof of his alleged cause of action, he loses. There is no more occasion for a remand for further evidence than in the ordinary case where a plaintiff fails in his proof. I would rest decision on this ground and think it unnecessary to consider the other matters discussed in the opinion.