**NEWFIELD v. STIEGLITZ et al.**

**In re A. STIEGLITZ & CO., Inc.**

District Court, S. D. New York.

Dec. 8, 1942.

Mathias Naphtali, of New York City, for trustee (plaintiff).

Benjamin W. Moore, of New York City (Milton L. Romm, of Yonkers, N. Y., of counsel), for defendant.

GALSTON, District Judge.

This cause was tried without a jury. It has been settled as to all of the defendants except the Receiver of the First National Bank and Trust Company of Yonkers, New York, and involves as to him only the second and the fourth causes of action.

From the complaint it appears that A. Stieglitz & Co., Inc., was incorporated under the laws of the State of New York in 1913, with an authorized capital stock of $125,000. It is alleged that all of the stock was issued but in the course of the trial it did not appear that all of such stock was issued for value, or indeed that any of it had been issued for cash or its equivalent. Continuing, the complaint sets forth that Stieglitz, who has since died, was the sole stockholder from the year 1920 to and including February 8, 1940, and was president and treasurer from 1929 to the date of his death in February, 1940, and had complete charge of the property and affairs of the corporation. A Stieglitz & Co., Inc., was adjudicated a bankrupt on or about May 15, 1940, and the plaintiff trustee appointed.

The second cause of action alleges that the corporation, between May 2, 1921, and January 10, 1940, diverted from its capital sums of money which were paid by the bankrupt partly directly and partly indirectly to certain insurance companies to meet premiums on policies of insurance which included, among others, policy No. 2,876,574 and policy No. 2,876,576, of the Mutual Life Insurance Company, with which we are solely concerned. The complaint admits that it was duly adjudicated by the Supreme Court of the State of New York and on appeal affirmed that the defendant's receiver was the owner by as-

signment of those policies, and that thereafter, pursuant to the judgment entered in the state court action, the life insurance company paid the proceeds of the two policies, amounting respectively to the sums of $6,000.39 and $6,000.40, with interest, to the defendant receiver. The plaintiff seeks to impress a trust upon the proceeds of the policies.

The fourth cause of action re-alleging pertinent matter, sets forth that on March 4, 1933, the Bank suspended business and that at such time the bankrupt had funds on deposit in the bank in the sum of $3,-250.84; that there was available to all depositors of the bank on December 16, 1943, a first dividend of 40% of the amount of their deposit, and that on December 20, 1934, the then receiver of the bank paid the sum of $1,300.34 to the bankrupt as a 40% dividend on the deposit; that thereafter a second dividend of 10% was declared by the receiver of the bank, and that the plaintiff became entitled to a payment of $325.-08 on its deposit. The plaintiff has demanded payment and it has been refused.

The defendant's answer alleges that the second cause of action fails to state a claim against the defendant upon which relief can be granted; that the action did not accrue within three or six years before the commencement of the suit and puts in issue material allegations of the complaint.

As to the fourth cause of action it likewise raises the question of the sufficiency of the complaint, makes general denial and alleges that on August 29, 1933, the bankrupt corporation delivered to the conservator of the bank an instrument which assigned the deposit account to Abraham Stieglitz.

The proof discloses that on May 2, 1921, the Mutual Life Insurance Company of New York issued a twenty payment life policy in the face amount of $10,000, No. 2,876,574, to Abraham Stieglitz. Goldie C. Stieglitz, his wife, was named as beneficiary therein and the right to change the beneficiary reserved. The annual premium was $497.80. Later, on November 2, 1929, Stieglitz's children were substituted as beneficiaries instead of his wife, and on December 11, 1934, the policy was converted into an ordinary life policy with an annual premium of $402.10. At the time that this policy was issued, the same company issued a twenty year endowment policy, No. 2,876,576, in the face amount of $10,000, on the life of Stieglitz, his wife

being named beneficiary, and the right reserved to change the beneficiary. The premium was stated to be $582.80. On November 2, 1929, the children, as in the former policy, were substituted beneficiaries under this policy and the policy was converted into an ordinary life policy on the same date, bearing an annual premium of $402.10.

Stieglitz, on November 18, 1933, borrowed money from the First National Bank and Trust Company of Yonkers, and gave his promissory note payable in thirty days for the payment thereof, in the sum of $18,500. This money was not repaid and on December 16, 1936, the then receiver of the bank obtained a judgment against Stieglitz in the amount of $20,486.34. Stieglitz assigned the two policies to the receiver of the bank on November 22, 1938, as security for the payment of the note and judgment. He died on February 8, 1940. The insurance companies, on December 1, 1941, paid the bank receiver $6,317.01 on policy No. 2,876,574, of which $6,000.39 were proceeds of the policy and the balance represented interest from February 29, 1940, to December 1, 1941, and also the sum of $6,320.18 on the second policy, of which $6,003,40 were the proceeds and the balance interest for the same period.

The plaintiff relies on Sec. 58 of the Stock Corporation Law of the State of New York, Consol.Laws, N.Y. c. 59, which reads: "No stock corporation shall declare or pay any dividend which shall impair its capital, nor while its capital is impaired, * * * or make any distribution of assets to any of its stockholders * * * unless the value of its assets remaining * * * after such distribution of assets * * * shall be at least equal to the aggregate amount of its debts and liabilities, including capital."

The question then is, what distribution of assets was made; and if made, was such distribution made while its capital was impaired, and in the event that there was such distribution of assets made while the capital was impaired, were its assets at least equal to the aggregate amount of its debts and liabilities including capital?

█ The plaintiff's proof is far from clear as to the vital elements of his case. First of all, it is important to determine what the capital of this corporation was. The capital of a New York corporation has been defined as its paid up, issued shares of stock. "The Legislature requires a cor-

poration which puts a par value on its shares to obtain payment of issued capital in cash or its equivalent." Aktieselskabet Christianssand v. Federal S. S. Corp., 121 Misc. 627, 201 N.Y.S. 504, 506, cited with approval in New York Credit Men's Association v. Harris, 170 Misc. 988, 11 N.Y. S.2d 435. See, also, Randall v. Bailey, Sup., 23 N.Y.S.2d 173, affirmed 262 App.Div. 844, 29 N.Y.S.2d 512.

The plaintiff failed to show what actually was paid in cash or its equivalent for the issue of $125,000 par value of its stock. His witnesses did not know whether the original stock issue of $100,000 was paid in, and one of them admitted that the additional $25,000 of stock issue was not paid for in cash or equivalent. Plaintiff's accountant conceded the corporation records failed to show that the stock issue was ever paid for. Moreover, the nature of the corporation's business was such as to cause doubt that any such considerable sum had been paid in for the issuance of the capital stock. The corporation did not carry a stock of merchandise. It ordered hosiery from manufacturers for shipment directly to the corporation's customers. Apparently it acted merely as a commission broker and its needs for operating capital were hardly more than nominal. In order to prove that the bankrupt's "capital" was impaired, the plaintiff had the burden of proving what that capital was. That failure of proof affects the weight of evidence that premium payments to the insurance companies on the two policies in question constituted an impairment of its capital. The books of the corporation were kept under Stieglitz's direction and probably answered his purposes, but they certainly do not support the plaintiff's contention. It is not clear from these books that such premium payments were other than loans to Stieglitz, or compensation to him for his services. Indeed there is no proof of any fixed amount paid to him as a salary, and the rest is left to speculation. Though the bookkeeper testified that Stieglitz received no salary, the income tax returns of the corporation do show a salary. But whether those payments actually were either salary or loans or both, they cannot be regarded as a distribution of assets such as is contemplated by Sec. 58 of the Corporation Law of New York. The records show that in 1938, 1939, and 1940, Stieglitz paid $1,570.50 back to the corporation, and these payments were posted in his personal account. Moreover, $4,458.61 of the account was transferred to "accounts receivable" on December 31, 1937, which makes it even more apparent that there was not a distribution of assets contemplated by the statute.

Finally, even if it were conceded that the plaintiff's proof disclosed that the premium payments were an impairment of paid in capital, it is difficult to see how the defendant bank, which was a bona fide purchaser for value without notice or knowledge of the source of the premium payments, can be obligated to re-pay those premiums. Quintal v. Adler, 146 Misc. 300, 262 N.Y.S. 126, affirmed 264 N.Y. 452, 191 N.E. 509. See, also, Reif v. Equitable Life Assurance Society, 268 N.Y. 269, 197 N.E. 278, 100 A.L.R. 55; Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 2 Cir., 109 F.2d 924.

Accordingly judgment for the defendant is directed as to the second cause of action. As to the fourth cause of action it is clear from the admissions of the defendant at the trial that the plaintiff, as the trustee of the bankrupt corporation, is entitled to receive the second dividend of 10% on the deposit which the corporation had on hand when the bank closed its doors. Plaintiff is thus entitled to a judgment of $325.08 with interest from October 30, 1937.

Appropriate findings of fact and conclusions of law will be filed with this decision.