CHARLES G. DUFFY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110834.   Promulgated August 13, 1943.

*William F. Barrett, Esq.*, for the petitioner.
*Henry J. Merry, Esq.*, for the respondent.

#### OPINION.

ARUNDELL, *Judge:* This proceeding is to test the correctness of respondent's determination of a deficiency in income tax for the calendar year 1939 in the sum of $519.39. The sole issue is the taxability of that portion of a dividend paid to petitioner during the year 1939, by a New York corporation from its earnings and profits for such year, which was returned to the corporation in the succeeding year. The facts have been stipulated and will be repeated here only in so far as is necessary to decide the question presented.

In December 1939 petitioner received a dividend of $24.929.58 from the Millfay Manufacturing Co., being his share of a total distribution of $150,000. It developed that the effect of the dividend was to create a deficit and, objection having been raised by certain of the stockholders to this condition, the board of directors of the Millfay Manufacturing Co. passed a resolution on February 16. 1940, purporting to rescind its action concerning the dividend in 1939 and at the same time declaring a dividend in a less amount. The difference was to be returned by the stockholders to the corporation. Thereupon petitioner returned to the Millfay Manufacturing Co. $14.024.14 and in his return for the year 1939, filed in the twenty-eighth district of New York, reported for income tax purposes $10,975.86, and no other amount, as dividend income from the Millfay Manufacturing Co.

The parties have agreed that the earnings and profits of the Millfay Manufacturing Co. for the year 1939. after making certain depreciation and other adjustments agreed to on July 23, 1940. by that corporation and representatives of the Bureau of Internal Revenue, were $91.508.55. The respondent proposes to tax petitioner on so much of the distribution received by him in 1939 as was paid out of the earnings of the corporation for that year, and it is agreed that this figure is $15.213.75.

Respondent's action appears to be clearly within the provisions of section 115(a) and (b) of the Internal Revenue Code [1] and must be approved unless happenings subsequent to the payment of the dividend require a different treatment.

The meager figures presented in the stipulation leave a rather confused picture, though we understand petitioner to rest his case upon

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS. [As amended by § 214, 1939 Act; § 501, 2d 1940 Act; §§ 146, 147, 166. 186, 1942 Act.]

(a) DEFINITION OF DIVIDENDS.—The term "dividend" when used in this chapter (except in section 201 (c) (5). section 204 (c) (11) and 207 (a) (2) and (b) (3) (where the reference is to dividends of insurance companies paid to policy holders)) means any distribution made by a corporation to its shareholders. whether in money or in other property, (1) out of its earnings or profits accumulated after February 28. 1913. or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distribution made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. Such term also means any distribution to its shareholders, whether in money or in other property, made by a corporation which. under the law applicable to the taxable year in which the distributio: is made. is a personal holding company, or which. for the taxable year in respect of which the distribution is made under section 504 (c) or section 506 or a corresponding provision of a prior income tax law. is a personal holding company under the law applicable to such taxable year.

(b) SOURCE OF DISTRIBUTIONS.—For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof. and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued. before March 1, 1913. may be distributed exempt from tax, after the earnings and profits accumulated after February 28. 1913. have been distributed. but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113. The preceding sentence shall not apply to a distribution which is a dividend within the meaning of the last sentence of subsection (a).

two principles. The first is that the payment of a dividend by a New York corporation resulting in a deficit is illegal and the dividend, to the extent of the deficit, must be returned by the shareholders; and the second is that in determining the extent of the deficit in this case we should look only to the books of the company at the close of the tax year and give no effect to the adjustments agreed upon by the company and the Bureau of Internal Revenue in July of the following year.

Neither of these principles is tenable under the facts of the present case. While New York law [2] prohibits the declaration of dividends which may impair capital or while capital is impaired, it specifies that if such a dividend is declared and paid the directors of the company shall be liable to the corporation or its creditors for any loss sustained by reason of such distribution. The existence of this remedy amply demonstrates that such a distribution is not void; and no liability is placed by the statute upon the shareholders either to respond to creditors or to refund to the company the amounts paid. If at the time of the distribution the stockholder knows it is made out of capital. he may be compelled to repay, *Cottrell* v. *Albany Card & Paper Manufacturing Co..* 142 App. Div. 148; 126 N. Y. Supp. 1070; but if he receives the dividend believing in good faith that it is a distribution of surplus. under New York law, as elsewhere generally, he is not required to return it to the company. *McDonald* v. *Williams.* 174 U. S. 397; *Quintal* v. *Adler.* 146 Misc. 300; 262 N. Y. Supp. 126; affd.. 239 App. Div. 775; 263 N. Y. Supp. 943; affd., 264 N. Y. 452; 191 N. E. 509. In the present case there is no indication that petitioner had knowledge at the time of the distribution or at any time in the tax year that the distribution created a deficit. Consequently. we cannot say he was under any obligation to return any amount to the company.

On the second point. it is well established that book figures are not

---

[2] Stock Corporation Law. § 58, Dividends:

"No stock corporation shall declare or pay any dividend which shall impair its capital, nor while its capital is impaired. nor shall any such corporation declare or pay any dividend or make any distribution of assets to any of its stockholders, whether upon a reduction of the number or par value of its shares or of its capital, unless the value of its assets remaining after the payment of such dividend, or after such distribution of assets, as the case may be. shall be at least equal to the aggregate amount of its debts and liabilities, including capital. In case any such dividend shall be paid, or any such distribution of assets made, the directors in whose administration the same shall have been declared or made, except those (1) who may have caused their dissent therefrom to be entered upon the minutes of the meetings of directors at the time or (2) who having been absent when such action was taken may have communicated in writing their dissent to the secretary or caused their dissent to be entered on the minutes within a reasonable time after learning of such action, or (3) who affirmatively show that they had reasonable grounds to believe, and did believe, that such dividend or distribution would not impair the capital of such corporation, shall be liable jointly and severally to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or by its creditors respectively by reason of such dividend or distribution. As amended L. 1938, c. 685, § 5; L. 1939, c. 364, § 1, eff. April 29, 1939."

controlling. *Edwards* v. *Douglas*, 269 U. S. 204, and that earnings and profits are to be computed for tax purposes on the basis of the corrected depreciation. *Holmquist* v. *Blair*, 35 Fed. (2d) 10. It frequently occurs that the decision as to what constitutes the proper allowance for depreciation, and therefore the correct amount of earnings and profits, is not made until the conclusion of litigation many years after the taxable period in dispute. *Corinne S. Koshland*, 33 B. T. A. 634. Petitioner, if called upon in a court action to make restitution, would not have been bound by the book figures, but could have relied upon the correct amounts. See *Cox* v. *Leahy*. 209 App. Div. 313; 204 N. Y. Supp. 741. The original erroneous entry of too great an amount in the depreciation reserve was merely a bookkeeping device, impounding no cash, and "was irrelevant to a determination of the amount of earnings comprised within the dividend here in question." *Neptune Meter Co.* v. *Price*, 98 Fed. (2d) 76.

In the present case petitioner received in the tax year an amount in excess of his share of the current earnings as properly adjusted. He received the amount as his own, presumably under a claim of right, and. as we have said, the distribution was not void. He is properly taxable upon his pro rata share of the earnings. though he voluntarily returned a part thereof in the succeeding year or might possibly have been compelled to do so. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Burnet* v. *Sanford & Brooks* Co.. 282 U. S. 359.

*Decision will be entered for the respondent..*