Elmer FRIED, as Trustee in Bankruptcy of International Distributing Export Co., Inc., Plaintiff,

v.

Arturo CANO, Defendant.

United States District Court
S. D. New York.

Nov. 17, 1958.

Herbert Rubin, New York City, for plaintiff.

Benjamin Gelosky, New York City, for defendant.

DAWSON, District Judge.

This action, tried by the Court without a jury, is one by Elmer Fried, as Trustee in Bankruptcy of International Distributing Export Co., Inc. (hereinafter referred to as I.D.E.). The plaintiff alleges three causes of action:

(1) To recover $11,500, the par value of 115 shares of preferred stock of I.D.E. issued to the defendant on January 2, 1950;

(2) To recover the sum of $7,144.96, representing dividends paid to the defendant on the preferred stock of I.D.E. at a time when said corporation was insolvent, and

(3) To recover the sum of $2,325, paid to the defendant without consideration at a time when the corporation was insolvent.

In the original complaint the plaintiff also sued for $1,700, the par value of 17 shares of stock issued to the defendant on October 31, 1953. As a result of the evidence adduced at the trial the plaintiff has withdrawn his claim with respect to the said 17 shares of stock and limited his claim with respect to the alleged unpaid-for stock to the sum of $11,500.

Preceding the trial a pre-trial conference was held and the issues to be tried were defined by the Court as follows:

(1) Whether the defendant purchased from the bankrupt corporation, before it went into bankruptcy, 115 shares of stock, plus 17 shares of stock.

(2) Whether the defendant paid for that stock.

(3) Whether the defendant received dividends on that stock in the total sum of $1,744.96.

(4) Whether at the time the dividends were paid to the defendant the corporation was insolvent, or its capital impaired, so that there were no funds available for the legal declaration of dividends.

(5) Whether the bankrupt corporation, before it went into bankruptcy, made payment to the defendant in the sum of $2,325 in excess of any amount of indebtedness owing by it to the defendant; and whether the defendant has repaid that money to the bankrupt.

In the course of the pre-trial conference the defendant conceded that he accepted the 115 shares of stock intending to pay for them in full, and stated it was his present claim that he did pay in full for the stock.

The defendant admitted that he received the dividends on the stock, as set forth in the complaint. He denied that the dividends were paid at a time when the corporation was insolvent or when its capital was impaired.

The findings of fact and conclusions of law of the Court, following the trial, on the issues hereinabove set forth are as follows:

(1) *Did the defendant purchase from the bankrupt corporation, before it went into bankruptcy, 115 shares of stock?*

The Court finds that the defendant did purchase from the bankrupt corporation, before it went into bankruptcy, 115 shares of $100 par value preferred stock. The fact that the defendant did purchase this stock, intending to pay for it, was admitted by his attorney. The evidence showed that on January 2, 1950, I.D.E. issued to the defendant certificate P–1 for 115 shares of preferred stock of a par value of $100 per share. The evidence was that he acquired this stock as a purchase.

(2) *Whether the defendant paid for the 115 shares of stock which he purchased?*

Defendant's defense to the first cause of action was that he had paid for the stock which was issued to him. He was asked how he paid for the stock and testified that he paid for it with money that I.D.E. owed him for loans which he had made to that corporation. (R. 340). However, in another place in his testimony he said that the loans which had

been made by him were loans which he had made to a Mr. Rojas, individually. (R. 333–337). Mr. Rojas was the president of the corporation. Mr. Rojas committed suicide at the time his company failed and so he was not available to give testimony in the case.

The defendant's proof of payment for the stock depends entirely upon his testimony that the corporation was owing him money and the stock was issued to him in payment of that debt. However, this testimony of the defendant at the trial was completely at variance with previous testimony which he had given in a 21(a) examination. At one such examination he testified that he had paid for the stock in cash. (R. 370). At another time in the examination in the bankruptcy proceedings the defendant testified that he had paid for the stock "by check," (R. 314) and that the check was made out to I.D.E. at the time he bought the shares. (R. 314–315). He was unable to produce any such check; the books of I.D.E. had no indication that it had received any such check or any cash for the stock.

At the 21(a) examination he was asked: "Prior to the time that you purchased these shares had you loaned any money to International?" He replied that he might have loaned them $1,000 or $2,000, but had never loaned them $11,500.

We have, therefore, a situation where the defendant testified one way under oath in the 21(a) examination and then testified in an entirely different manner at this trial. The defendant is a businessman. He testified that the money which had been loaned represented his life savings. The amounts involved were not insignificant. For him to testify in a diametrically contradictory manner on these occasions casts such doubt upon his veracity that the Court can give his testimony no credence. In the absence of some more definitive proof, the Court cannot accept the testimony of the defendant that he had paid for the stock by means of money which he had loaned to I.D.E. The books of account

of I.D.E. have no indication in them that he had loaned money to I.D.E., or that the stock was issued in repayment of such loan; nor has the defendant any receipt for the money which he now says he loaned to the corporation. It may be that he had loaned money individually to Mr. Rojas, but there is no proof that Mr. Rojas had paid such money into the corporation.

[2] Since the defendant admittedly had received the stock and has pleaded "payment" as a defense to the action, the burden of proof was upon the defendant to prove that he had in fact paid for the stock. Conkling v. Weatherwax, 1905, 181 N.Y. 258, 73 N.E. 1028; 70 C.J.S. Payment § 93 (1951); Richardson on Evidence § 103 (8th ed. 1955). The defendant has not met this burden of proof. The Court must, therefore, conclude that there is no competent proof that the defendant paid for the 115 shares of the preferred stock which he had acquired from the corporation, nor is there any proof that the corporation had received $11,500 in payment of such stock from defendant.

The Court finds as a fact that the defendant did not pay to the corporation money for the stock which he had received from the corporation. The Court concludes that having received the stock as a purchase the defendant was under an obligation to pay to the corporation $11,500 for the shares of stock, and not having paid this amount or any part thereof the defendant is indebted to the Trustee in Bankruptcy in the sum of $11,500.

(3) *Did the defendant receive dividends on the stock in the total sum of $7,144.96?*

The defendant in his answer admitted receiving dividends in the total sum of $7,144.96, and the Court so finds, and finds that the dividends were paid during the period April, 1950 to April, 1955.

(4) *Whether at the time the dividends were paid the corporation was insolvent, or its capital impaired, so that no funds were available for the legal declaration of dividends?*

The Court finds that I.D.E. was organized on September 7, 1948 under the laws of the State of New York, and commenced business on November 1, 1948. Prior to these dates, Rojas was the sole proprietor of a business carried on by him in New York under the name of International Distributing Export Company. He turned over the business to the newly organized corporation of the same name on or about October 31, 1948 in consideration of the issuance to him of 18 shares of common stock and the issuance to August Polo, his assistant, of 2 shares of common stock, the 20 shares constituting all the issued and outstanding stock of the corporation.

On October 31, 1948, the newly organized corporation took over the assets and liabilities of the former individual proprietorship. As of that date, according to the books, the liabilities amounted to $64,084.81. The assets of the former individual proprietorship, according to the books, amounted to $33,042.22. However, the corporation set up an asset on its balance sheet, described as "good will," to which it ascribed a value of $32,000. As a result of this entry for good will, I.D.E. had a surplus, and in each of the fiscal years ending on October 31st of each of the following calendar years, I.D.E. reported a surplus in the following amounts:

| 1949 | – | $7218.50 |
| 1950 | – | $6733.21 |
| 1951 | – | $7084.22 |
| 1952 | – | $6736.63 |
| 1953 | – | $7331.34 |
| 1954 | – | ($386,946.15) |

The Minute Book shows that when dividends were declared the accountant reported that the surplus was sufficient to allow the declaration of the dividend. The income tax returns of the corporation for the years in which dividends were paid showed that the corporation, at least from a book standpoint, had a surplus out of which dividends could be paid. It is true that this might have

been a fictitious surplus, if the good will was not of the value attributed to it, or if certain accounts receivable carried on the books were not collectible. However, no proof was offered that the defendant had knowledge at the time that he received the dividends that they were being paid out of capital or that the corporation was insolvent. There was no evidence produced that the corporation was not paying its debts as they matured.

The law is clear that the wrongful declaration of a dividend out of capital, in violation of § 58 of the New York Stock Corporation Law, McKinney's Consol.Laws, c. 59, is a wrong of those committing it and innocent participants are not accomplices to its commission; and in order to hold the stockholder who received the dividend liable it is necessary positively to allege and prove the stockholder's complicity in and knowledge of the wrong. Wood v. National City Bank, 2 Cir., 1928, 24 F.2d 661, 662; Quintal v. Adler, S.T.Sup.Ct., 146 Misc. 300, 262 N.Y.S. 126 affirmed, 1st Dep't 1933, 239 App.Div. 775, 263 N.Y.S. 943 affirmed, 1934, 264 N.Y. 452, 191 N. E. 509.

The Court holds that the plaintiff has not established by a fair preponderance of the evidence that the defendant had knowledge that the dividends received by him were paid out of capital of I.D.E., or that the dividends which were paid impaired the capital of I.D.E. The Court concludes that the plaintiff has not established a cause of action against the defendant, in so far as the defendant received dividends from I.D.E.

*Whether the bankrupt corporation, before it went into bankruptcy, made payment to the defendant in the sum of $2,325 in excess of any amount of indebtedness owing by it to the defendant, and whether the defendant has repaid that money to the bankrupt.*

The Court concludes that plaintiff has not established by a fair preponderance of the evidence that I.D.E. made payment to the defendant of the sum of $2,325 in excess of any indebtedness owing by it to the defendant. At the trial the plaintiff reduced the claim on this cause of action from $3,325 to $2,325. The defendant testified that he had never borrowed any monies himself from the bankrupt. The defendant was a principal in a corporation known as Cangold, Inc., which operated a restaurant and night club on Queens Boulevard, in Queens, known as "The Boulevard." The testimony was that from time to time the bankrupt loaned monies to Cangold, Inc. One of these transactions, which appeared from the books of the bankrupt, involved a loan in the amount of $2,025 by the bankrupt to Cangold, Inc., for which Cangold, Inc. issued its check for $2,025, plus $75 interest, to the bankrupt. The question as to whether this check remained unpaid was the subject of some testimony which did not definitively settle the issue. However, in any event, for plaintiff to succeed on this cause of action it is necessary for him to prove that the transaction was with the defendant, rather than with Cangold, Inc. There was no proof that the loan was made to the defendant and the presumption would be that the loan was made to the company which issued its check, rather than to an individual. The balance of $300, which makes up the total of $2,325, was admittedly received by the defendant on June 29, 1955, when, he testified, it was received by him as a dividend. If this is so there was no obligation on his part to return it to the bankrupt and the evidence is not sufficient to dispute his contention to that effect.

### Decision

The Court concludes that defendant is liable to the plaintiff on the first cause of action in the sum of $11,500, together with interest thereon from January 2, 1950.

The Court further concludes that the plaintiff has not established sufficient facts to show that it is entitled to recover anything on the second and third causes of action, and the Court concludes

that such causes of action should be dismissed, with costs.

This opinion shall constitute the findings of fact and conclusions of law of the Court.