## LYON, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8994.

Circuit Court of Appeals, Sixth Circuit.

April 13, 1942.

Elden McFarland, of Washington, D. C. (Elden McFarland, of Washington, D. C., G. A. Donohue, of New York City, and Ike Lanier, of Cincinnati, Ohio, on the brief), for petitioner.

Samuel H. Levy, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Samuel H. Levy, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The ultimate question to be decided in this review is whether the respondent correctly determined the basis for depreciation of patents owned by the petitioning taxpayer. This depends upon whether the taxpayer acquired the patents in pursuance of a reorganization. If it did, the proper base is $56,411.90, the cost of the patents to the transferrer. If it did not, the base is $1,146,201.21, which was the fair market value of the patent applications at the time of their transfer. Deficiencies were determined in income taxes for the years 1934 to 1937, inclusive, by rejecting the taxpayer's deductions for depreciation on the fair value basis, and recomputing its taxes by an allowance for depreciation on the cost basis. The Board of Tax Appeals upheld the respondent.

It will aid understanding of the problem if we narrate the steps taken by the principal stockholder of the taxpayer, to defer or avoid substantial tax burdens, and detail his frankly avowed purposes as we refer to the statutory provisions upon which he relied, and the contemporaneous development of the law interpreting them. The taxpayer is a corporation organized June 6, 1930, under the laws of Delaware, and its principal stockholder is G. Albert Lyon. Prior to May 3, 1930, Lyon was engaged in the manufacture of metal covers for automobile tires, in Detroit. He was also the owner of numerous applications for American and Canadian patents relating to tire covers, and owned machinery and equipment for their manufacture. In February, 1930, he negotiated with the

Houdaille-Hershey Company for the sale of his business and patent applications, and on May 3, a contract was consummated whereby Lyon, or a corporation to be formed by him, would sell the Houdaille-Hershey Company the tire cover business and Lyon would grant it an exclusive license to manufacture under his patents. At the time of the agreement the book value of Lyon's assets, exclusive of patent rights, was $203,572.30, and he carried patent rights on his books at cost of development, $56,411.90. The contract also granted to the purchaser an option to buy the patents.

Since the patent rights were found by the Board to have had at the time a fair market value of over a million dollars, it will readily be seen that Lyon's tax situation at once became to him a matter of great concern. He consulted counsel and was advised that if he transferred his assets to a temporary corporation in exchange for all of its stock, and then caused the temporary corporation to transfer the assets so received to a permanent operating corporation in exchange for less than 80% of its stock, neither the transfer to the temporary corporation nor its transfer to the permanent corporation would be subject to tax, and the permanent corporation would be entitled to use, as the cost of the assets, their value at the time they were acquired. A plan in accordance with this advice was put into effect. On June 12, 1930, Lyon transferred his tire cover business, including patent applications, subject to the agreement of May 3, to a corporation organized by him under the style "Lyon Development Company, Inc.," and received in exchange all of the corporation's stock. Two days later, on June 14, this corporation transferred the assets received from Lyon, likewise subject to the contract of May 3, to the petitioner in exchange for 885 shares of petitioner's Class A voting stock and 1600 shares of its Class B non-voting stock. The stock received by the temporary corporation constituted 79.27% of the taxpayer's total stock. On June 13, 1930, Lyon's wife, Elizabeth Aikens Lyon, transferred certain stocks owned by her to the taxpayer in exchange for 650 shares of its Class A voting stock, which resulted in all of the stock being owned by the Lyons.

The formation of the two corporations and the several transfers, were steps in pursuance of a preconceived plan and were approved by appropriate resolutions of the directors of the two companies. Since its acquisition of the Lyon assets the taxpayer has been actively engaged in the manufacture and sale of automobile parts and accessories other than those connected with the tire cover patents, and has been collecting royalties under the license agreement. In November, 1930, the temporary corporation, Lyon Development, Inc., distributed all of its assets, consisting only of stock of the taxpayer to Lyon, and in 1937 it was formally dissolved by the State of Delaware for nonpayment of franchise taxes. The respondent assessed a deficiency for 1930 (not here involved) against Lyon, on the ground that a sale of his assets, other than patents, had been effected by him personally, and Lyon paid the tax. Why no deficiency was assessed or tax paid for 1930, by reason of a sale of patent rights, does not appear.

Lyon's plan was to sell his tire cover business and patent applications in such manner that the tax upon any gain derived therefrom would be postponed, and the corporation formed to hold the patents enabled to use a basis for depreciation, stepped up from Lyon's cost to current fair value. The first part of his purpose was in part achieved by the transfer of all of his assets to the temporary corporation in exchange for all of its stock. This was a tax-free transaction within § 112(b) (5) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 377, which provides that: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

By virtue of § 113(a) (6), 26 U.S.C.A. Int.Rev.Acts, page 381, however, the basis for valuing the transferred assets remained the same in the hands of the corporation as when they were owned by Lyon. The stepped up basis was sought to be achieved by the transfer of the assets to a second corporation, and thereby not only to effect a tax-free reorganization but to make applicable to depreciation base § 113(a)

212

(7) of the same statute, which provides: "(7) Transfers to corporation where control of property remains in same persons. If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer."

It will be observed that under § 113(a) (7), a transfer by a corporation in connection with a reorganization leaves the basis the same as in the hands of the transferrer only if immediately after the transfer an interest or control in the property of 80% remains in the same persons, or any of them. It was for this reason that the temporary corporation exchanged its assets for stock which constituted but 79.-27% of the petitioner's capitalization. The remaining stock of the taxpayer was acquired directly from the taxpayer by Mrs. Lyon in exchange for some stock that she held in Lyon & Wilson, Inc., and additional stock in that company which Lyon, at the time, gave her as a gift, for the purpose of making the exchange. Since the interests of Mrs. Lyon and the temporary corporation in the property transferred were thought to be substantially disproportionate to the amounts of stock respectively received by them it was believed that the taxpayer would not be required to use the transferrer's basis but would be permitted to use as a basis its own cost in pursuance of the provisions of §§ 112(b) (5) and 113(a) (8).

However, on July 7, 1935, the Supreme Court decided the case of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L. Ed. 596, 97 A.L.R. 1355, affirming the decision of the Second Circuit Court of Appeals in 69 F.2d 809 and adopting the view of that court that when the statute speaks of a transfer of assets by one cor-

poration to another in pursuance of a plan of reorganization, it means a reorganization that has a business purpose and is not simply a mere device for the transfer of securities. This conclusion is reached without questioning the legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether to avoid them, by means which the law permits. Following the Gregory decision the taxpayer then asserted that since the temporary corporation, under the doctrine therein announced, was a mere conduit for the transfer of the Lyon assets to the permanent corporation, there was, in fact, no statutory reorganization, and in consequence it was entitled to compute depreciation on the basis of its own cost rather than the transferrer's, even though the transferrer's interest in the assets might be regarded as substantially 80%. The Board of Tax Appeals, calling attention to the fact that the respondent did not elect to tax Lyon upon the gain derived from the assignment of his patent rights to the temporary corporation, concluded that it was reasonably to be inferred that he considered the exchange between the temporary and the permanent corporation to constitute a tax-free reorganization under the law as until then it had been construed, and that this was the view likewise held by Lyon and the petitioner. It therefore applied what it considered to be the rationale of Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 358, 84 L.Ed. 406, wherein it was said: "The Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute."

If the Board in its interpretation of Higgins v. Smith, and the respondent, in the brief and argument of its counsel, mean to assert that the doctrine of that case is that the taxing authorities may consider a corporation a reality or a mere fiction, whichever view advantages the revenue in a particular case, we are reluctant, if not, indeed, wholly unable to follow them. It would not conform to a long held concept of due process nor contribute to public confidence in the fair-

ness of government in tax transactions with its citizens. We agree with the taxpayer that Higgins v. Smith is not authority for the proposition that a transaction which cannot, under the law, be a reorganization, may yet, at the option of the government, be treated as such for the purpose of imposing a tax. No reorganization problem is involved in Higgins v. Smith. The taxpayer there set up a paper loss upon a transaction between himself and a wholly owned corporation, by selling stock to the corporation. No loss in the statutory sense was recognized, the sale being considered as lacking in substance and bona fides to create one.

 Though in disagreement with the Board's interpretation of Higgins v. Smith, we come to the conclusion on other grounds that the formation of the taxpayer was effected through a reorganization as that is defined by § 112(i) (1) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 379, and that this view is not precluded by Gregory v. Helvering, supra. There the taxpayer owned all the stock of a corporation which, among other assets, held stock of another corporation. For the sole purpose of securing a transfer of these shares to her in order to sell them for her individual profit and at the same time diminish the amount of income tax which would result from a direct transfer by way of dividend, the taxpayer sought to bring about a reorganization under § 112(g) of the statute here involved. To that end she caused another corporation to be organized to which the stock was transferred. The second corporation transferred the shares to the taxpayer as a liquidating dividend, and was then promptly put to death. The court held there was no reorganization because the corporation emerging from the plan had no business purpose and was a mere contrivance for the passing of stock into the hands of its sole stockholder for the purpose of limiting her tax burden.

Lyon's plan bears a different aspect. The corporation emerging from it, is real, was formed for a business purpose and continues to function as a business enterprise. The Supreme Court, in the Gregory case, said [293 U.S. 465, 55 S.Ct. 267, 79 L.Ed. 596, 97 A.L.R. 1355]: "When subdivision (B) speaks of a transfer of assets by one corporation to another, it means a transfer made 'in pursuance of a plan of reorganization' (section 112(g) of corporate business; and not a transfer of assets by one corporation to another in pursuance of a plan having *no relation to the business of either*, as plainly is the case here." Assuming Lyon's temporary corporation to have been but a conduit for the passing of stock from Lyon to the taxpayer, the resultant was a corporate entity existing and functioning as a business institution. That which gives character to a reorganization, certainly in a popular sense and, we think, likewise in the statutory sense, is the entity or activity which is brought into being by the reorganization plan. It is the nature of its formation and control that determines the incidence of the tax, and the basis for recognition of gain, loss and depreciation. Granted that there may be no reality to a device which takes on the corporate form when it has no business purpose, it still does not follow that when the merely formal entity is given life and vitality and is transformed into a living activated enterprise, there is no reorganization. The changing of one corporation having no business purpose into another corporation without business purpose, is but a change of style and still lacks business purpose. It is but the same thing under another name. But when a corporation however lacking in economic reason for existence is so transformed and vitalized that a new economic enterprise has come into being with purpose, function and reason for permanent existence, then we think it is the product of a reorganization both in its technical and popular sense.

Section 113(a) (12) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 700, provides that if property was acquired by a corporation in any taxable year prior to January 1, 1934, the basis thereof shall be the same as the basis prescribed in the Revenue Act of 1932, § 113(a) (7), 26 U.S.C.A. Int.Rev.Acts, page 516, which provides that if the property of a corporation was acquired after December 31, 1917, in connection with a reorganization and immediately after the transfer the interest and control in such property of 50 or more per cent remained in the same persons, or any of them, the basis shall be the same as though in the hands of the transferrer. The 80% limitation was reduced to 50% to check tax avoidance not only in the Revenue Act of 1932 but in subsequent Revenue Acts. The taxpayer concedes that if the patents

were acquired by it in connection with a reorganization, depreciation or amortization deductions must be based upon the transferrer's basis, which in turn was the cost of the patents to Lyon. Having concluded that notwithstanding the taxpayer's reliance upon the decision in Gregory v. Helvering, supra, there was a reorganization, the Board's decision sustaining the Commissioner in limiting the depreciation base to Lyon's cost, must be upheld, unless there is persuasiveness in the taxpayer's concluding argument.

The taxpayer asserts that the entire transaction must be viewed as a whole, and so viewing it, it is but a transfer of Lyon's assets to it, without consideration to be given to the separate steps by which the transfer was effected, and so a tax-free transfer by two individuals to a corporation in exchange for all of the corporate stock, with the transferee not obliged to take the cost basis of the transferrers, because the stock was not issued in proportion to the value of the exchanged property. Among other cases, it relies upon our decisions in Com'r v. Ashland Oil & Refining Co., 6 Cir., 99 F. 2d 588, and Miller v. Com'r, 6 Cir., 103 F.2d 58. Little need be said of this contention. Lyon set out with deliberate purpose to separate his transfer of assets into separate steps, each for a specific and separate tax purpose. His purpose was in part achieved. Neither he nor his creature, the corporation, may now complain because the respondent viewed the transaction as they themselves had intended it to be, not a single unitary transaction, but one of separate steps. In United States v. John Barth Co., 279 U.S. 370, 49 S.Ct. 366, 368, 73 L.Ed. 743, the court said in adjudicating liability upon a bond given by a taxpayer to avoid distraint. "The taxpayer has obtained his object by the use of a bond, and he should not object to making good the contract by which he obtained the delay he sought." We applied similar reasoning in rejecting an analogous contention in Simmons Mfg. Co. v. Routzahn, 6 Cir., 62 F.2d 947, 949. So it may here be said that the taxpayer's controlling stockholder secured a deferment of tax liability upon the gain derived from the sale of his patents measured by the difference between their cost and their fair value, and having gained his object by the use of a separate step in his tax avoidance plan, he may not justly urge that this step be disregarded by viewing the transaction as a whole.

The decision of the Board of Tax Appeals is affirmed.