**GEORGIA PROPERTIES CO.**

v.

**Lipe HENSLEE, etc.**

**GEORGIA PROPERTIES CO.**

v.

**Early M. McCANN, etc.**

**Civ. A. Nos. 2023, 2024.**

United States District Court
M. D. Tennessee, Nashville Division.

Dec. 15, 1955.

F. A. Berry and W. W. Berry (of Bass, Berry & Sims), Nashville, Tenn., for plaintiff.

Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., Robert B. Ross, Dept. of Justice, Washington, D. C., for defendant.

WILLIAM E. MILLER, District Judge.

As set forth in the plaintiff's brief, the sole question for decision is " * * * whether Georgia Properties Co. is entitled to use the amount it paid for the stock of Rhodes-Haverty Investment. Company as a basis for computing depreciation on the physical assets ac-

quired by it in the liquidation of the Rhodes-Haverty Investment Company; or whether the adjusted basis of these assets to the Rhodes-Haverty Investment Company must be carried over to plaintiff and used by it in computing depreciation".

Plaintiff was incorporated under the laws of Delaware on September 3, 1946, and thereafter qualified to do business in the state of Georgia. Under its charter it was authorized to own, hold and manage real property. The purpose of its incorporation was to acquire and operate a 21-story office building located in the hotel district of Atlanta, referred to in the record as the Rhodes-Haverty Building, and owned by the Rhodes-Haverty Investment Company, a Georgia corporation. The Investment Company formerly had extensive property holdings in Atlanta, but by June of 1946 it had disposed of all of its properties with the exception of the office building and a smaller adjoining building.

On June 8, 1946, the attorney for the Investment Company wrote Mr. C. E. Murrey, President of the First Mortgage Company of Nashville, indicating that the office building was for sale and inquiring whether he would be interested in its purchase. Mr. Murrey replied on June 11, 1946, that he was interested but requested further information. Thereafter, further correspondence and negotiations ensued resulting in the parties practically agreeing upon the terms for the purchase and sale of the physical assets of the Investment Company. But before the agreement was consummated, the parties representing the Investment Company announced that it was impossible to sell the physical properties, and suggested that the transaction be handled by the purchase and sale of all of the outstanding shares of stock of the Investment Company. Following further negotiations the transaction was completed on that basis. The shares of stock of the Investment Company were first transferred to Mr. Murrey, and after organizing the plaintiff as a corporation, he in turn transferred to it the shares of stock of the Investment Company. Shortly thereafter the plaintiff caused the Investment Company to be liquidated and dissolved, all of its assets being transferred to the plaintiff in exchange for the cancellation of the shares of stock of the Investment Company.

The evidence discloses that Mr. Murrey was acting in the transaction on behalf of himself and other persons whom he had interested in the purchase of the property, and that it was his intention from the beginning, if the purchase was effected, to organize a corporation to take title to the properties rather than to have title vested in the interested parties individually. Further, it appears without substantial dispute that the intent and motive of the purchasers at the outset of the transaction was in reality to purchase the physical assets and, indeed, that they would have done so except for the refusal of the Investment Company to consummate the sale on that basis. It may be that such refusal was due to the tax situation of the Investment Company, but whatever the reason, the purchasers were required either to purchase the outstanding stock of the Investment Company or to abandon the transaction altogether.

Considering the undisputed testimony in the case, together with the documentary evidence, the conclusion is also inescapable that the liquidation of the Investment Company was accomplished merely as a necessary step in the process of acquiring title to the property. In fact, all steps leading to the final acquisition of title by the plaintiff were taken with the design and purpose to bring about that result.

For the years 1947 and 1948 the plaintiff, in computing depreciation in its income tax returns, carried over and used the adjusted basis of the assets to the Investment Company. It followed the same method in computing depreciation in its returns for 1949 and 1950. However, the plaintiff contends that the adjusted basis of said assets to the Investment Company at the time of its liquidation was substantially less than the

amount paid by the plaintiff for the stock of that company, and that as a result of using such carry-over basis for computing its allowable depreciation on the properties acquired, rather than the amount paid for the purchase of the stock, it overstated and overpaid its income tax liability for 1949 in the amount of $7,207.27 and for the year 1950 in the amount of $11,457.72. To recover the overpayment for those years, plaintiff duly filed claims for refund with the Commissioner of Internal Revenue which were considered by him and disallowed. Following such disallowance the present actions were timely filed to recover the alleged overpayments for the years 1949 and 1950.

To explain its failure to claim the amount paid for the stock of the Investment Company as the basis for computing depreciation in its returns for the years 1947 to 1950, inclusive, plaintiff offered the testimony of its auditor, A. H. Blair. He testified that he prepared the returns for the plaintiff and that it was his decision to use the carry-over basis of the Investment Company for the reason that at the time the returns were prepared, there was doubt in his mind that the use of the stepped-up basis was legally permissible; that after the 1950 return was prepared and filed there came to his attention the decision of the Tax Court in Kimbell-Diamond Milling Co. v. Commissioner of Internal Revenue, 14 T.C. 74, decided January 27, 1950; that the decision in that case, in his opinion, clearly justified under the circumstances the use of the stepped-up basis for depreciation; that he advised the plaintiff accordingly and steps were then taken to claim a refund for the years 1949 and 1950 but not for prior years which were barred by the statute of limitations.

The defendants insist that if the conclusion is reached that the transaction was in reality a single integrated transaction for the purchase of the physical assets of the Investment Company, the plaintiffs are nevertheless precluded from a recovery for a number of reasons.

In the first place, it is argued that the taxpayer has no right to look through the form of the transaction to its substance in order to relieve itself from its tax burdens, but that the right to do so is one which only the Commissioner of Internal Revenue or the Government can exercise. To support the argument defendants rely largely upon Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L. Ed. 406, and Moline Properties, Inc., v. Commissioner of Internal Revenue, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499, but such interpretation of the opinions in those cases appears to be unwarranted. A similar contention was advanced in Lyon, Inc., v. Commissioner of Internal Revenue, 6 Cir., 127 F.2d 210, 212, and was rejected in an opinion written by Judge Simons in the following language:

"If the Board in its interpretation of Higgins v. Smith, and the respondent, in the brief and argument of its counsel, mean to assert that the doctrine of that case is that the taxing authorities may consider a corporation a reality or a mere fiction, whichever view advantages the revenue in a particular case, we are reluctant, if not, indeed, wholly unable to follow them. It would not conform to a long held concept of due process nor contribute to public confidence in the fairness of government in tax transactions with its citizens. We agree with the taxpayer that Higgins v. Smith is not authority for the proposition that a transaction which cannot, under the law, be a reorganization, may yet, at the option of the government, be treated as such for the purpose of imposing a tax. No reorganization problem is involved in Higgins v. Smith. The taxpayer there set up a paper loss upon a transaction between himself and a wholly owned corporation, by selling stock to the corporation. No loss in the statutory sense was recognized, the sale being considered as lacking in substance and bona fides to create one."

590

In Moline Properties, Inc.; v. Commissioner of Internal Revenue, supra, the taxpayer sought to have the gain on sales of its real property treated as the gain of its sole stockholder and its corporate existence ignored as merely fictitious. But the court found from the facts that the corporation was created for a real as distinguished from a fictitious purpose, to promote the business necessities of its sole stockholder. It, therefore, refused to disregard the corporate form, although recognizing that "In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal." [319 U.S. 436, 63 S.Ct. 1134.] To construe the opinion as authority for the thesis that the Court may not disregard the form of a transaction and look to its substance to relieve a taxpayer from a tax burden is to distort its meaning. The court did nothing more in that case than to hold that the corporation was in fact a real corporation created for a business purpose and was not "a bald and mischievous fiction."

■ Moreover, dealing specifically with the question here involved, the courts have generally enunciated the rule that where the essential nature of a transaction is the acquisition of property, it will be viewed as a whole and closely related steps will not be separated either at the instance of the taxpayer or the taxing authority, "without regard to whether the result is imposition or relief from taxation". Commissioner of Internal Revenue v. Ashland Oil & R. Co., 6 Cir., 99 F.2d 588, 591, certiorari denied 306 U.S. 661, 59 S.Ct. 786, 83 L.Ed. 1057; Kanawha Gas & Utilities Co. v. Commissioner of Internal Revenue, 5 Cir., 214 F.2d 685; Koppers Coal Co. v. Commissioner of Internal Revenue, 6 T.C. 1209; Kimbell-Diamond Milling Co. v. Commissioner of Internal Revenue, 14 T.C. 74, affirmed 5 Cir., 187 F.2d 718, certiorari denied 342 U.S. 827, 72 S.Ct. 50, 96 L.Ed. 626.

The defendants further contend that the plaintiff, having elected to file its returns for the years 1947–1950 upon the carry-over basis, is bound by its election and is estopped to contend for the amount paid for the purchase of stock as the proper basis for the two years involved. While there appears to be no definitive authority upon the exact question, the necessary elements of a binding election or of an estoppel appear to be wholly lacking. The estoppel found to exist in the case of Robinson v. Commissioner of Internal Revenue, 6 Cir., 100 F. 2d 847, 849, derived from the finding that "the Government has been deprived of a part of its just revenue by the conduct of petitioner and to relieve her of liability on the belated position she takes in these proceedings would be a manifest injustice and a direct violation of the principle of equitable estoppel." Such a finding of fact in the instant case would not be justified.

■ If the Court is correct in its conclusion that the real nature of the transaction controls, it necessarily follows that the plaintiff paid more than its just tax liability, not only for the particular years involved but also for the two prior years from which the plaintiff can obtain no relief because of time limitations imposed by statute. To require the Government to return the excess liability for the years 1949 and 1950 is merely to give effect to what the Court considers to be the essential nature of the transaction, i. e., the purchase of property by the plaintiff or the acquisition of physical assets. No sound reason is perceived to sustain the proposition that since the taxpayer made a mistake in filing its returns for the first four years of its existence, it should be forever thereafter held to the consequences of its mistake and not entitled to the relief generally afforded to all taxpayers to recover excess taxes which have been erroneously paid and received. The fact that an erroneous basis was used for computing depreciation cannot be construed as a representation to the Government by the taxpayer that the same basis would be followed or used thereafter or that claims for refund would not be seasonably filed.

The insistence that if the returns had been filed on the stepped-up basis, the

Government could have investigated the transaction and insisted upon the payment of a capital gains tax by the plaintiff, overlooks the fact that regardless of its form the result effectuated by the parties was a transfer of the property from the Investment Company to the plaintiff, and that no taxable gain has been realized since the property is still owned by the plaintiff. Cf. Commissioner of Internal Revenue v. Ashland Oil & R. Co., 6 Cir., 99 F.2d 588, 592.

The final argument on behalf of the defendants is that although it may have been the intention of Murrey to acquire title to the physical assets, that intention cannot be passed on to and adopted by a corporation which he later organized. The argument is purely technical. It is in effect another way of saying that the taxpayer has no right to urge the Court to look through the form of the transaction to its substance, an argument which has already been considered and rejected. The acquisition of title to the stock in Murrey's name was merely for a temporary purpose of convenience, i. e., to hold title as a medium or conduit only until a corporation could be duly organized. It was in fact organized and the stock transferred to it without delay for the same price which had been paid by Murrey. No sound reason suggests itself to the Court why the essential nature of the transaction should not be given full effect and the corporate plaintiff regarded as the real purchaser of the property from the beginning.

The record is replete with evidence that the plaintiff was organized for a substantial business purpose. Mr. Murrey testified that he had always done business in that form as he desired to have the advantages of corporate organization as compared with doing business as a partnership or otherwise. In organizing the corporation he simply complied with a pattern uniformly followed in other similar transactions.

For the reasons and upon the authority of the decisions herein set forth, the Court is of the opinion that

Sections 112(b) (6) and 113(a) (15) of the Internal Revenue Code of 1939, 26 U.S.C.A., are not applicable and that the plaintiff is entitled to the relief sought.

A judgment will be submitted in conformity with this memorandum.