OPINION. Black, Judge: The determination of the issues involved herein is dependent upon the tax effect given to a transaction involving a series of steps: (1) Kelly, the owner of all the capital stock of Rondout 1935, at first tentatively agreed and then refused to sell the assets, primarily a paper mill, of Rondout 1935, which the individual petitioners, Suter, Aal, and Hartman, were seeking to purchase. The individual petitioners then agreed to purchase, and did purchase, Kelly’s stock for $500,000, $150,000 in cash and $350,000 in notes, which was approximately equal to the fair market value of the net assets of Rondout 1935. (2) The individual petitioners shortly thereafter distributed the assets of Rondout 1935 to themselves and dissolved it. (3) Immediately thereafter they transferred the assets received upon liquidation of Rondout 1935 to a newly formed corporation, Rondout 1945, and Rondout 1945, in consideration therefor, assumed the $350,000 liability due to Kelly from the individual petitioners; issued its notes of $150,000 to the individual petitioners to cover the cash payment to Kelly; and issued additional notes in the amount of $4,742.05 to Suter, Aal, and Hartman. The individual petitioners paid in $900 for all of the capital stock of Rondout 1945, and they held the stock in equal shares as they had held the stock of Rondout 1935, except that under the new corporate structure. Suter had a 50 per cent voting interest and Aal and Hartman combined had the other 50 per cent. The Commissioner, in his determination of the deficiencies, treated the several transactions separately and, as stated in our preliminary statement, determined that the individual petitioners each received a dividend of $29,427.57 in 1945, and that the corporate petitioner, in its 1946 return, deducted $12,526.31 too much depreciation. The latter adjustment was based on the determination by the Commissioner that Rondout 1945 must take the same basis for depreciation as Rondout 1935. We shall now take up and decide the issues raised by the pleadings. Depreciation. Rondout 1945 allocated its cost (the liabilities it assumed plus the notes it issued) among its assets and used that amount as a basis for depreciation. Respondent partially disallowed the depreciation claimed, determining that the basis of Rondout 1945’s assets was the same as the basis in the hands of Rondout 1935.[4] The basis for depreciation is as provided in section 114 (a). Sec. 23 (n). Section 114 (a) provides that the basis for depreciation shall be the adjusted basis provided in section 113 (b). Section 113 (b) provides that the basis shall be the basis determined under section 113 (a) with certain adjustments not applicable here. Section 113 (a) provides, with numerous exceptions, that “the basis of property shall be the cost of such property.” The exception upon which the respondent relies is section 113 (a) (7). Section 113 (a) (7) provides, in part, that if the property was acquired in a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor. Respondent contends that the property was acquired in connection with a reorganization as defined in section 112 (g) (1) (D), “a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred,” or as defined in section 112 (g) (1) (F), “a mere change in identity, form, or place of organization, however effected.” The petitioner, on the other hand, argues that the series of steps, i.e., the purchase of Rondout 1935 stock by Suter, Aal, and Hartman; the dissolution and liquidation of Rondout 1935 and the transfer of the assets of Rondout 1935 to Suter, Aal, and Hartman; and the transfer of those assets to Rondout 1945, constitute a purchase by Rondout 1945 of the assets of Rondout 1935. Substance, rather than form, governs the tax effect of the transaction here involved. United States v. Phellis, 257 U. S. 156, 168 (1921). Prior to the transaction Kelly owned all the shares of Rondout 1935 which owned and operated a paper mill. After the transaction was completed, Suter, Aal, and Hartman owned all the shares of Rondout 1945 which owned and operated the same mill. The object sought to be accomplished by the transaction was the acquisition of the mill for the purpose of utilizing its productive capacity as a source of supply for the paper-jobbing business of Aal and Hartman. The means employed to achieve the object were the several steps heretofore mentioned. The steps were all part of a predetermined plan designed to effectuate the inter se agreement of the individual purchasers. When the series of steps is viewed as one transaction, which the foregoing indicates that it is, it is clear that there was no reorganization under section 112 (g) (1) (D) since the transferor (Rondout 1935) or its shareholder (Kelly) was not in control of the transferee (Rondout 1945) immediately after the transfer,[5] Prairie Oil & Gas Co. v. Motter, (C. A. 10, 1933) 66 F. 2d 309, or under section 112 (g) (1) (F) since “a transaction which shifts the ownership of the proprietary interest in a corporation is hardly ‘a mere change in identity, form, or place of organization’ * * *.” Helvering v. Southwest Corp., 315 U. S. 194, 202-203 (1942). Petitioners rely on the rule of Commissioner v. Ashland Oil & R. Co., (C. A. 6, 1938) 99 F. 2d 588, certiorari denied 306 U. S. 661. That case “involved a taxpayer who was forced to purchase the stock of a corporation in order to reach the primary objective of acquiring the corporate property through liquidation and dissolution. * * * The court concluded that the two steps — the stock purchase and the liquidation — were to be taken as a single transaction despite their separation in time by a considerable period. The question was whether the taxpayer realized a gain on liquidation. It was held that though the transaction was, in form, a purchase of stock, in substance, it was a purchase of property and that since the taxpayer still held the property, no taxable gain was realized on the liquidation.” H. B. Snively, 19 T. C. 850, 859 (1953). The basis of the properties in such a case is the cost of the stock. Koppers Coal Co., 6 T. C. 1209, 1217-1222 (1946); Prairie Oil & Gas Co. v. Motter, supra. This principle has been applied in cases involving corporate purchasers, see Kimbell-Diamond Milling Co., 14 T. C. 74 (1950), affd. (C. A. 5, 1951) 187 F. 2d 718; individual purchasers, see H. B. Snively, supra; and individual purchasers who transfer the stock to a newly formed corporation, see Georgia Properties Co. v. Henslee, (M. D. Tenn., 1955) 138 F. Supp. 587. In John Simmons Co., 25 T. C. 635 (1955), a case relied upon by respondent, we held that the Ashland rule does not apply where the purpose was not to acquire assets but to acquire stock in a going business and to continue that business in a new corporate form. We think the Simmons case, supra, is distinguishable on its facts. The record here shows that Aal and Hartman, who were advancing the necessary cash for the purchase, wanted the mill as a source of supply for their paper-distributing business; that the purchasers first negotiated for the assets — primarily the mill — and did enter into a tentative agreement to purchase the assets; that the corporation, aside from its physical assets, had nothing of value which interested the purchasers; and that the purchasers, after they took over the mill’s operation, completely changed its products and sold only to customers of the paper-jobbing business of Aal and Hartman. These facts, we think, clearly indicate that the purpose of the stock acquisition was to acquire assets rather than stock in a going business. It is true that Rondout 1935 owned assets other than the physical properties at the time of the stock purchase but that does not require a different result. The failure to “strip down,” although an important circumstance in determining whether the intent and purpose were to purchase assets or to purchase stock, cannot be regarded as prohibiting a finding that the intent and purpose were to purchase assets, especially when other circumstances indicate otherwise,[6] The record here compels a finding that, in substance, assets were purchased. And, again giving effect to substance, we think that the intermediate transactions should be disregarded and Rondout 1945 considered the purchaser.[7] Therefore, the basis of the assets transferred to it on July 2, 1945, is the cost ($500,000) of the stock of Rondout 1935. The parties have agreed by stipulation on the amount of depreciation which is to be allowed as a deduction, depending on whether our decision sustains respondent that the transactions shall be treated separately, or whether we sustain petitioners’ contention that the transactions shall be viewed as one, namely, a purchase by Rondout 1945 of the assets of the paper mill from Rondout 1935. On this depreciation issue, we sustain petitioner Rondout Paper Mills, Inc. Therefore, in a recomputation under Rule 50, the corporate petitioner should be allowed a deduction for depreciation for the year 1946 in the amount of $19,579.88, which will be in accordance with the stipulation of the parties. Dividends. The issue with respect to the individual petitioners is whether they each received a dividend in the amount of $29,427.57 in the taxable year 1945 upon the issuance by Rondout 1945 of notes in the total amount of $150,000 to petitioners Aal and Hartman and the assumption by Rondout 1945 of the joint and several liability of Suter, Aal, and Hartman of $350,000 to Kelly. The respondent measured the alleged dividend attributable to each individual petitioner by one-third of the total of accumulated and current earnings and profits of Rondout 1935 and the current earnings and profits of Rondout 1945. Since we hold that the transaction constituted a purchase by Rond-out 1945 of the assets of Rondout 1935 for $500,000, which amount constituted its cost basis for the assets it purchased, the assumption of the liability for the purchase price by Rondout 1945 would not constitute a distribution of earnings and profits to the shareholders but would merely constitute Rondout 1945’s payment for the assets it purchased and received. Also, of course, the earnings and profits of Rondout 1935 would not carry over to Rondout 1945 since there was no reorganization and since Rondout 1945 was a separate and distinct taxable entity. On this issue of dividends of $29,427.57 to each individual petitioner, we hold in favor of petitioners. Statute of Limitations. It has been stipulated that each of the individual petitioners signed waivers in January 1951 and these waivers were later extended to and including June 30, 1955. The notices of deliciency were mailed December 14, 1954. Inasmuch as the waivers were signed in each case more than 3 years after the returns were filed, they are ineffective unless each petitioner omitted from his gross income an amount properly includible therein which is in excess of 25 per cent of the gross income stated in his original return so that the 5-year period of limitations under section 275 (c) applies. Section 276 (b) provides: (b) Waiver. — Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. [Emphasis supplied.] The time prescribed in section 275, as far as pertinent here, is 3 years under subsection (a) and 5 years under subsection (c). The waivers, having been consented to after 3 years and before 5 years, would not be valid if the time prescribed in subsection (a) (3 years) applied but would be valid if the time prescribed in subsection (c) (5 years) applied. What respondent contends with respect to the statute of limitations is stated in his brief as follows: As the result of failing to report the above-described dividend, Suter, Hartman and Aal omitted from the gross income reported in their income tax returns for the year 1045, an amount properiy includible therein which is in excess of 25 per cent of their reported gross income. We have held against respondent on this issue of dividends. The effect of our holding is that petitioners omitted no such dividends from their gross income reported in their 1945 returns. Therefore, it is clear that section 275 (c) has no application. We sustain petitioners on the issue of the statute of limitations. Reviewed by the Court. Decisions will he entered under Rule 50. There Is no dispute over the depreciation rate used. The transfers of the assets to and from Suter, Aal, and Hartman can be disregarded since they acted as mere conduits for the delivery of the assets. Survaunt v. Commissioner, (C. A. 8, 1947) 162 F. 2d 753, 755. Cf. Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179, 184-185 (1942). Compare the assets held hy the old corporation In Kimbell-Diamond Milling Co., 14 T. C. 74 (1950), and H. B. Snively, 19 T. C. 850 (1953) with the assets held by the old corporation in Commissioner v. Ashland Oil & R. Co., (C. A. 6, 1938), 99 F. 2d 588, and Koppers Coal Co., 6 T. C. 1209 (1946). Respondent argues that the Intent to purchase assets cannot he ascribed to Rondout 1945. This contention is apparently based on the fact that Rondout 1945 was formed subsequent to the stock purchase by its three individual shareholders. “The argument is purely technical,” Georgia Properties Co. v. Henslee, (M. D. Tenn., 1955) 138 F. Supp. 587, 591. There has been no argument regarding section 112 (b) (6), but it is clear that that section Is inapplicable where, as here, assets were purchased. See Kimbell-Diamond Milling Co., supra.